NORTHLAND INSURANCE COMPANY v. H. DAVID WALLS, IND. & T/A H. D. WALLS TRUCKING COMPANY ET AL.

[No. 243, September Term, 1980.]

*Decided December 11, 1980.*

The cause was argued before THOMPSON, MOORE and LISS, JJ.

*Samuel H. Smalkin* for appellant.

*James C. Hubbard,* with whom were *Nier, Jarrell & Hubbard* on the brief, for appellees.

THOMPSON, J., delivered the opinion of the Court.

In this case we are concerned with the responsibility of an insurance company to provide a defense to its insured in a tort action arising out of an automobile accident.

Northland Insurance Company (Insurer), the appellant, issued to H. David Walls (Insured), the appellee, a policy of automobile liability insurance. Insured financed the annual premium of $5,984.00 through Tifco, Inc., a premium finance company. A down payment of $1,795.00 was made, leaving an unpaid balance of $4,189.00. This amount, plus a finance charge of $194.27, a total of $4,383.27, was to be paid in nine installments of $487.03 each, due on the 11th of each month, the first such payment to be made on December 11, 1976. The insured duly remitted the installments due on December 11, 1976 and January 11, 1977, but failed to remit the installment due on February 11, 1977. On March 18, 1977, Tifco, Inc., after giving the insured the notice required by statute,[1] sent a "Notice of Cancellation" to Insurer to be effective as of 12:01 a.m., March 18, 1977.

At the time the subject insurance policy was issued, it was filed on behalf of the insured in the states of Connecticut, North Carolina, and South Carolina. Insurer neglected to notify the proper authorities in those states of the cancellation of the policy on March 18, 1977. The insurer claims that, for that reason, a cancellation notice was issued on July 18, 1977, notifying those authorities of cancellation of the policy, effective August 22, 1977. Under date of August 5, 1977, the insurer's agent sent a letter to the insured informing him that the cancellation notice, dated

---

1. Md. Ann. Code art. 48A, § 486F (b), provides: "Not less than ten (10) days written notice shall be mailed to the insured of the intent of the premium finance company to cancel the insurance contract or contracts unless the defaulted installment payment is received within said ten (10) day period."

July 18, 1977, did not supersede or replace the finance company's cancellation of March 18, 1977.

On June 13, 1977, a truck owned by insured became involved in an accident. In November, 1978, a suit arising out of the accident was filed in the Circuit Court for Caroline County which terminated on March 13, 1980, with judgment in favor of the insured. The insurer declined to furnish a defense to insured in the tort action; so the insured filed this declaratory judgment action, which resulted in a decree holding that the subject policy was still in force on June 13, 1977. The chancellor, Clayton C. Carter, found that the policy had not been effectively terminated for three reasons: (1) The insurer failed to give the insured the notice of cancellation which the policy required; (2) The insurer failed to notify the Connecticut, North Carolina, and South Carolina authorities of the policy cancellation on March 18, 1977; and (3) The insurer failed to return the unearned policy premium to Tifco within 60 days.[2] We affirm on the basis of the first of the reasons listed.

The policy contained the following provision:

> "This policy may be cancelled by the company by mailing to the named insured at the address shown in this policy, written notice stating when not less than forty-five days thereafter such cancellation shall be effective; except that if the named insured fails to discharge when due any of his obligations in connection with the payment of premium for this policy or any installment thereof, *whether payable directly to the company or its agent or indirectly under any premium finance plan or extension of credit,* this policy may be cancelled by the company

---

2. Md. Ann. Code art. 48A, § 486F (f) provides:

"Whenever an insurance contract is cancelled in accordance with this section, the insurer shall return whatever gross unearned premiums are due under the contract to the premium finance company for the account of the insured or insureds within a reasonable time not to exceed 60 days after the receipt by the insurer of the notice of cancellation, or after the completion of any payroll audit necessary to determine the amount of premium earned while the policy was in force. The audit shall be performed within 60 days after the receipt by the insurer of the notice of cancellation."

by mailing to the named insured at the address shown in this policy written notice stating when not less than ten days thereafter such cancellation shall be effective." (Emphasis added).

The chancellor found that, under this provision, the insurer was obligated to give the insured 10 days notice of any cancellation for non-payment of premiums. The insurer argues that the provision is not applicable here. It contends that the provision is applicable only when the policy is cancelled by "the company" and not when, as here, the policy is cancelled at the request of the insured or his agent.[3] The insurer finds support for its argument in *Davis v. Roddie,* 274 A.2d 297 (N.J. Super. 1971), *Sweers v. Malloy,* 281 N.Y.S.2d 693 (App. Div. 1967), and *Stone v. Travelers Insurance Company,* 242 N.Y.S.2d 583 (Sup. Ct. 1962). Each of these cases indicates that a policy provision requiring notice to the insured prior to cancellation by the insurer is inapplicable where the request for cancellation is made by a premium finance company acting as the agent of the insured.

These cases are inapposite because it does not appear that the policy provisions required that the insurer give notice of cancellation for failure to make payments due under a premium finance agreement. In the instant case, the policy provision specifically requires such notice. We agree with the chancellor that, under this policy, the insurer obligated itself to give notice to the insured of any cancellation, regardless of whether such cancellation was for failure to make payments to it or to a premium finance company. Any other interpretation would make meaningless the language in the provision which we emphasized above.

There is no need for us to discuss the other reasons given by the chancellor to support his decree.

*Decree affirmed.*

*Appellant to pay the costs.*

---

**3.** A clause in the premium finance agreement between the insured and Tifco provided: "Insured hereby appoints Tifco as its attorney-in-fact to cancel any or all of the aforementioned policies * * *."